Rockingham,
No. 5435.

JUDGE OF PROBATE

*v.*

DOROTHY M. NUDD, *Adm'x & a.*

Argued January 5, 1966.
Decided April 29, 1966.

*Manning & Sullivan* ( *Mr. James A. Manning* orally ), for the plaintiff-in-interest Christine G. Nudd.

174

*George R. Scammon* ( by brief and orally ), for the defendant Donald Chase.

BLANDIN, J. These actions are a continuation of the long and involved dispute upon which we previously handed down an opinion in *Judge of Probate* v. *Nudd,* 105 N. H. 311, decided March 31, 1964.

The issue now before us which seems determinative of the entire controversy is whether the record supports the Court's finding in both cases that "the technical default of the administratrix was without legal damage to the plaintiff-in-interest in both cases . . . the suit upon a bond remanded March 31, 1961( sic 1964 ) and . . . [the] probate appeal." Upon these findings, the Court ordered judgment for the defendant Donald Chase, who is surety upon the bond in the penal sum of $750.

In *Judge of Probate* v. *Nudd, supra,* 313, we said that although the bond was procured by misrepresentation, the plaintiff-in-interest, Christine B. Nudd, was neither aware of or in any way responsible for this. We held that Chase, who had signed the instrument without reading it or knowing it was a bond, was liable, that judgment in the penal sum of $750 should be entered ( RSA 565:9 ), and execution should issue under the controlling provisions of RSA 565:10 for the amount due on Christine's claim.

An examination of the record now before us, including numerous exhibits, furnishes evidence upon which the Court could have found the following: The defendant administratrix Dorothy, wife of J. J. Nudd deceased, who, with a minor daughter Elizabeth, were the surviving heirs, was appointed administratrix on October 2, 1945. On the same day the bond presently in suit, signed by the administratrix and two sureties, including the defendant Chase, was approved by the judge of probate. The administratrix filed an inventory on November 14, 1945, which was accepted on November 27, 1945. After filing the inventory, it became apparent that it was necessary to sell real estate to pay the obligations of the estate. A commissioner of insolvency was appointed on October 1, 1946 ( RSA 557:1, 2 ), and on May 9, 1948, a petition to sell was filed by the administratrix. A license was granted on July 19, 1948, conditioned upon the increase of the bond to $6,000. This license included "the homestead right

and widow's dower and the reversion thereof," as did a second license to sell more land pursuant to a petition filed August 10, 1948.

On July 19, 1948, a bond dated July 15, 1948, in the penal sum of $6,000, with the Royal Indemnity Company as surety, was approved by the judge of probate, and on July 20, the Chase bond was cancelled. Thereafter, the real estate was sold on October 15, 1948. The reason for the sale was the claim of the plaintiff Christine against the decedent, in the form of a promissory note for $3,000, payable to her and signed by him September 4, 1945, shortly before his death. The personal property being insufficient to satisfy this claim necessitated the disposal of the real estate. RSA 554:17.

All assets which came into the administratrix's hands prior to the cancellation of the Chase bond on July 20, 1948 and the issuance of a new bond with the Royal Indemnity Company as surety, signed July 15, 1948 and approved July 19, 1948, had been properly expended by the administratrix, except for an advance of $500 to her daughter Elizabeth, in payment of preferred charges. RSA 554:19.

These expenditures, not including the $500 advance, not only exhausted all the personal estate, but there remained an unpaid balance due on the priority claims of $508.71 to become a charge on the real estate. Even if the plaintiff had not advanced $500 improperly to her daughter, there would still have remained no monies from which she could have legally paid the plaintiff.

The new surety company bond was expressly conditioned on the administratrix faithfully accounting for the proceeds of the sale of the real estate and paying from these avails all just claims against the estate. Indisputably, after July 19, 1948, the administratrix committed certain defaults, thereby breaching the conditions of this bond. On January 17, 1958, upon her final accounting, the judge of probate having found the administratrix liable to the plaintiff Christine for the sum of $4,235.69, ordered her to pay this. She did not do so. The defendant Chase had no notice of these proceedings and knew nothing about them until he was sued on his bond.

Thereafter, the plaintiff released the Royal Indemnity Company upon payment to her of $3,480.60 from all further liability and proceeded against Chase upon his bond. *Judge of Probate*

v. *Nudd, supra.* After holding him liable on his bond, we ordered that it be forfeited and that judgment be rendered in the penal sum of $750. RSA 565:9. However, we further held that execution under RSA 565:10 should issue for the "amount found due on the claim of the plaintiff-in-interest." *Judge of Probate* v. *Nudd, supra,* 313. We then remanded the case to the Superior Court.

The reason for the remand was that under our law the plaintiff could levy execution for only the amount found equitably due (*Harris* v. *Davis,* 1 N. H. 248; RSA 565:10) and for a sum sufficient to cover her damage arising from the breach of the Chase bond. *Gookin* v. *Hoit,* 3 N. H. 392; *Lisbon Sav. Bank & Co.* v. *Moulton's Estate,* 91 N. H. 477, 479.

The Trial Court, after hearing all the evidence adduced, both in the suit on the bond and on the defendant Chase's appeal from the decree of the judge of probate, holding the administratrix liable in the sum of $4,235.69, found that there was nothing equitably due on the plaintiff's claim chargeable to the Chase bond. We believe this conclusion was correct. As already pointed out, until after the date of the cancellation of the Chase bond, no monies which could have legally been paid to the plaintiff had come into the administratrix's possession. It therefore appears that no default of the administratrix up to the time the Chase bond was discharged had damaged the plaintiff. A portion of the losses caused to her by subsequent defaults, as previously stated, she collected from the Royal Indemnity Company. In this situation, she is not entitled to execution against the defendant. *Gookin* v. *Hoit, supra*; *Lisbon Sav. Bank & Co.* v. *Moulton's Estate, supra.*

The present case is clearly distinguishable from *Century Indemnity Co.* v. *Casualty Co.,* 89 N. H. 121. In that situation, there was a default prior to the cancellation of the defendant's bond. The Court found that this was a continuing default and that it resulted in damage to the plaintiff. However, the opinion made it clear that where there has been no default prior to the cancellation of a bond, the surety is relieved of further liability for future breaches. *Id.,* 124-125. The case before us falls in the latter category.

What we have said renders unnecessary discussion of other issues. The Court's findings being sustainable on the record, the order is

*Plaintiff-in-interest Christine G. Nudd's
exceptions overruled; judgment for the
defendant Chase.*

WHEELER, J., did not sit; the others concurred.